UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

BABETTE, C.[1],

                                      Plaintiff,        19cv-6323-FPG

v.                                                  DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                                    Defendant.

## INTRODUCTION

On December 18, 2015, Plaintiff filed an application for supplemental security income ("SSI") benefits alleging disability beginning on October 1, 2014. Tr.[2] at 86, 161-66. After the application was initially denied, Plaintiff timely requested a hearing. Tr. 98. On May 1, 2018, she appeared with her attorney, Joseph Paladino, Esq., and testified before Administrative Law Judge Eric Eklund ("the ALJ"). Tr. 56-78. A Vocational Expert ("VE"), Courtney Oles, also testified at the hearing. Tr. 78-83. The ALJ issued an unfavorable decision on May 15, 2018. Tr. 16-25. Plaintiff then requested review by the Appeals Council, which the Council denied on March 11, 2019, making the ALJ's decision the final decision of the Commissioner. Tr. 1-4. Subsequently, Plaintiff brought this action pursuant to Title XVI of the Social Security Act (the "Act") seeking review of the final decision of the Commissioner which denied her application for SSI.[3] ECF No. 1. Presently before the Court are the parties' competing motions for judgment on the pleadings. ECF Nos. 15, 16. For the reasons set forth below, Plaintiff's motion for judgment on the pleadings

---

[1] In accordance with the Standing Order dated November 18, 2020, regarding the identification of non-government parties in Social Security opinions, available at http://www.nywd.courts.gov/standing-orders-and-district-plans, Plaintiff is identified by her first name and last initial.

[2] "Tr." refers to the administrative record in the matter. ECF No. 9.

[3] The Court has jurisdiction over this matter under 42 U.S.C. § 405(g).

1

is DENIED, the Commissioner's motion is GRANTED, and the Commissioner's decision is AFFIRMED.

## LEGAL STANDARD

### I. District Court Review

The scope of this Court's review of the ALJ's decision denying benefits to Plaintiff is limited. It is not the function of the Court to determine *de novo* whether Plaintiff is disabled. *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 447 (2d Cir. 2012). Rather, so long as a review of the administrative record confirms that "there is substantial evidence supporting the Commissioner's decision," and "the Commissioner applied the correct legal standard," the Commissioner's determination should not be disturbed. *Acierno v. Barnhart*, 475 F.3d 77, 80-81 (2d Cir. 2007), *cert. denied*, 551 U.S. 1132 (2007). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Brault*, 683 F.3d at 447-48 (internal citation and quotation marks omitted).

### II. Disability Determination

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At Step One, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 416.920(b). If so, the claimant is not disabled. If not, the ALJ proceeds to Step Two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* § 416.920(c). If the claimant does not have a severe impairment or combination of impairments,

the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to Step Three.

At Step Three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* § 416.920(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, *id.* § 416.909, the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id.* § 416.920(e)-(f).

The ALJ then proceeds to Step Four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 416.920(f). If the claimant can perform such requirements, then he or she is not disabled. *Id.* If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id.* § 416.20(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 416.960(c).

## DISCUSSION

### I. The ALJ's Decision

At Step One of the sequential analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the application date of December 18, 2015. Tr. 18. At Step Two, the ALJ found that Plaintiff suffered from one severe impairment: undifferentiated connective

tissue disease ("UCTD").[4] *Id*. He also found that Plaintiff's hyperlipidemia, hypertension, mild lumbar degenerative disease, headaches, cataracts, and sensitivity to fluorescent lighting were non-severe impairments. Tr. 19. The ALJ determined that because the record failed to document a diagnosis of lupus or fibromyalgia, both disorders were not medically determinable impairments for purposes of Plaintiff's application for benefits. Tr. 19-20. At Step Three of the analysis, the ALJ found that the severity of Plaintiff's impairments did not meet or equal the criteria of any Listing. Tr. 20. The ALJ then determined that Plaintiff retained the RFC to perform a full range of light work with occasional crawling and climbing of ladders, ropes, and scaffolds; frequent stooping, balancing, kneeling, crouching, and climbing of ramps and stairs; and with wearing eye protection to block out fluorescent lighting in any work situations. *Id*.

At Step Four of the sequential analysis, the ALJ found that Plaintiff had no past relevant work to perform. Tr. 24. The ALJ then proceeded to Step Five, where he determined that there were jobs in significant numbers in the national economy that a person of Plaintiff's age, education, and work experience could perform. *Id*. Specifically, the ALJ found that Plaintiff could work as an office helper, mail sorter, and cashier. *Id.*

**II.   Analysis**

Plaintiff argues that the ALJ improperly weighed the opinion evidence contained in the record, and, as such, formulated her RFC based on his lay opinion instead of relying on any medical opinion. ECF No. 15-1. The Court disagrees.

---

[4] UCTD is an autoimmune disease that have characteristics of various connective tissue diseases, such as rheumatoid arthritis or lupus, but do not meet the criteria to be defined as such. *See* U.S. DEP'T. OF HEALTH, NAT'L INST. OF HEALTH, Undifferentiated Connective Tissue Disease., https://rarediseases.info.nih.gov/diseases/12342/undifferentiated-connective-tissue-disease (last visited on December 15, 2020). Symptoms of UCTD may vary, but more common symptoms include Raynaud phenomenon, arthritis, joint pain, fever, dryness in the eyes and mouth, ulcers in the mouth, sensitivity to sunlight, skin rash, particularly on the cheeks, or hair loss. *Id*.

In arriving at Plaintiff's RFC, the ALJ evaluated two opinions contained in the record. The first opinion was issued by Dr. Bansal, Plaintiff's primary care physician, which the ALJ afforded "little to almost no weight." Tr. 23. Plaintiff argues that that the ALJ failed to afford it controlling weight and "gave no reasoning" when he evaluated the opinion. ECF No. 17 at 7-10.

It has been well-established that the opinion of a treating source should be given controlling weight if it "is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 416.927(c)(2). When assigning less than controlling weight to a treating physician's opinion, the ALJ must consider the *Burgess* factors, such as the frequency, length, nature, and extent of treatment; the amount of medical evidence supporting the opinion; the consistency of the opinion with the remaining medical evidence; and whether the physician is a specialist. *Id.*; *see also Estrella v. Berryhill*, 925 F.3d 90, 95-96 (2d Cir. 2019) (internal quotation marks omitted); *Burgess v. Astrue*, 537 F.3d 117 (2d Cir. 2008). A reviewing court should remand for failure to explicitly consider the *Burgess* factors unless a searching review of the record shows that the ALJ has provided "good reasons" for his weight assessment. *See Guerra v. Saul*, 778 F. App'x 75, 77 (2d Cir. 2019) (summary order) (although the ALJ did not explicitly consider the *Burgess* factors, the ALJ provided sufficient good reasons for the weight assigned); *see also Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013) (summary order) ("We require no such slavish recitation of each and every factor where the ALJ's reasoning and adherence to the regulation are clear.") Here, while the ALJ did not explicitly consider the *Burgess* factors when he assigned less than controlling weight to Dr. Bansal's opinion, the Court, however, finds that he provided sufficient "good reasons" for the weight assigned to the opinion.

In his opinion, Dr. Bansal diagnosed Plaintiff with UCTD and lupus, and noted that Plaintiff could sit, stand, and walk for less than two hours in an eight-hour workday, would require walking every fifteen minutes for two minutes, and would need to take unscheduled fifteen-minute breaks every hour. Tr. 704-05. He also opined that Plaintiff could occasionally lift and carry less than ten pounds, look down or up, hold her head in a static position, and twist, but could never lift and carry more than twenty pounds, crouch, or climb stairs and ladders. Tr. 706. He further determined that Plaintiff was incapable of even "low stress" jobs due to fatigue, joint pain, and photosensitivity, and that she would be absent from work more than four days per month as a result of her impairments. *Id.* The ALJ afforded "little to almost no weight" to this opinion and specified that the reasons for doing so was because the degree of limitations identified by Dr. Bansal was not supported by his contemporaneous treatment records, was based on Plaintiff's subjective allegations, and was inconsistent with Plaintiff's activities of daily living and with other evidence in the record, which demonstrated minimal objective laboratory or physical examination findings, and the almost complete lack of treatment required or received by Plaintiff for the impairments she claimed to be disabling. Tr. 23.

It should be first noted that even though Dr. Bansal included the diagnosis of UCTD and lupus in his opinion, he was not a specialist in autoimmune disorders, and primarily treated Plaintiff for hyperlipidemia (high cholesterol) and hypertension (high blood pressure) during the relevant time period. Tr. 242, 301-09, 372-77. Aside from his mentioning of lupus and UCTD, the only references to either of these conditions appeared in his treatment records when he either referred Plaintiff to a rheumatologist or made notations of her "possible lupus" based on Plaintiff's consultations with rheumatology and neurology specialists. Tr. 245, 301. Dr. Bansal has neither

6

provided treatment, nor prescribed medications for lupus or UCTD, as his scope of treatment related only to Plaintiff's high cholesterol and blood pressure.

Secondly, the recitation of Plaintiff's symptoms that his treatment records provide do not support the level of limitation Dr. Bansal identified in his opinion. His physical examinations of Plaintiff were largely unremarkable, and lacked any mentioning of any symptoms of knee, elbow, shoulder, or back pain, photosensitivity, or fatigue, which he asserted in his opinion. The only reference to joint pain appears in Dr. Bansal's treatment records following a domestic violence incident that Plaintiff was involved in, however, even then, despite multiple areas of bruising sustained by Plaintiff, she had no neurological deficits. *Rusin v. Berryhill*, 726 F. App'x 837, 839 (2d Cir. 2018) (summary order) (no error in declining to afford controlling weight to the opinion of plaintiff's treating physician because it was inconsistent with his treatment notes and diagnostic observations, the other medical opinion evidence, and plaintiff's reported activities of daily living).

Dr. Bansal's restrictive limitations were not only unsupported by his own treatment records, but were also inconsistent with the other medical evidence contained in the record. Despite alleging long-term history of disabling symptoms stemming from lupus, Plaintiff had not seen a rheumatologist for 15 years from when she first started experiencing some of her symptoms until she saw Dr. Tabechian following Dr. Bansal's referral. Tr. 251. As result of his evaluation, Dr. Tabechian opined that Plaintiff showed no evidence of any underlying connective tissue disease. Tr. 252, 258. Even though Plaintiff complained of joint stiffness and was wearing sunglasses on and off during some of her examinations, her physical examinations for the most part were unremarkable because Plaintiff did not have any signs of tender or swollen joints, loss of deep tendon reflexes, skin atrophy, rash, scarring, or skin loss, dry mouth, mouth sores or ulcers, headaches, weak muscles, or muscle swelling. Tr. 252, 266-68. Following the laboratory testing,

Plaintiff's serum C3 level was slightly below normal, which was the only reason why Dr. Tabechian diagnosed Plaintiff with UCTD and referred her to a neurologist for further neurologic assessment. Tr. 259. During the neurological examination by Dr. Holloway, Plaintiff, again, complained about having severe disabling symptoms associated with lupus, however, her examination, with the exception of symmetric decreased vibratory sensation at the great toes, was largely normal. Tr. 264. Dr. Holloway opined that Plaintiff was not experiencing any neurologic manifestations of lupus, and that some of her symptoms might be related to psychiatric or cognitive symptoms. *Id*. When Plaintiff returned to Dr. Tabechian, her examination was, once again, unremarkable, as Plaintiff did not even appear to be bothered by the fluorescent lighting unlike at her previous examination. Tr. 266-68. Dr. Tabechian reaffirmed that, based on Plaintiff's serologies and clinical presentation, she did not have lupus, but may have had a variation of UCTD as her C3 blood test was just below normal. Tr. 268. Notably, to alleviate Plaintiff's allegedly disabling symptoms, Dr. Tabechian prescribed Plaquenil, which Plaintiff never took because she believed that her diet, exercise, and vitamin supplementation were the best methods of treatment of the impairments she was suffering from. Notably, for the same reasons, Plaintiff also declined to take medication prescribed by Dr. Bansal to treat high cholesterol and blood pressure.

Throughout his decision, the ALJ provided more than just "a one sentence assertion" about the inconsistency of Dr. Bansal's opinion with the record, and, instead, made numerous references to Dr. Bansal's treatment records, provided a detailed analysis of Plaintiff's testimony about the nature of her symptoms, and discussed the inconsistency of such testimony with the medical evidence contained in the record. Tr. 21-23. Therefore, the Court finds no reasons to disturb the ALJ's evaluation of Dr. Bansal's opinion. *See Guerra*, 778 F. App'x at 77 ("Supported by ample

treatment notes, physical examination findings, and [plaintiff's] testimony, the ALJ's assignment of less than controlling weight to [plaintiff's] treating physician's opinions was not in error.").

Similarly, the Court finds that the ALJ did not err in assigning partial weight to the opinion of the non-examining physician Dr. McCormack because his conclusions that Plaintiff's UCTD was not a medically determinable impairment was inconsistent with the opinion of Dr. Tabechian who diagnosed Plaintiff with UCTD based on her C3 serum blood level. *See Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998) ("[I]t is up to the agency, and not this court, to weigh the conflicting evidence in the record.").

Plaintiff's argument that the ALJ was obligated to seek clarification from Dr. Bansal if he felt that his opinion was inconsistent with his treatment records is misplaced. ECF No. 15 at 10. The ALJ's duty to develop the record arises where there are obvious "gaps in the record," or "when the record serves as an inadequate basis on which to render a decision." *Dunne v. Comm'r of Soc. Sec.*, 349 F. Supp. 3d 250, 258 (W.D.N.Y. 2018). However, "where there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." *Petrie v. Astrue*, 412 F. App'x 401, 406 (2d Cir. 2011); *Reithel v. Comm'r of Soc. Sec.*, 330 F. Supp. 3d 904, 912 (W.D.N.Y. 2018) ("[T]he [ALJ] need only re-contact sources or obtain additional information where there is a conflict or ambiguity that must be resolved but that cannot be resolved based on the evidence present in the record."). Here, Plaintiff's medical history relevant to lupus, or any other autoimmune disorder for that matter, was either non-existent or sparse at best. The reason for that was not in the ALJ's purported failure to compile Plaintiff's medical record, but simply in the lack of any objective evidence that supported Plaintiff's alleged symptoms regardless of how much Plaintiff believed she was suffering from lupus. This belief

appears to have been based on a comment made by a resident physician in 2001 that she had ANA negative lupus, however, the record does not support this finding. *See Pellam v. Astrue*, 508 F. App'x 87, 90 (2d Cir. 2013) (summary order) (the ALJ was not obligated to supplement the record when the ALJ had all of the treatment records from plaintiff's treating physicians). Even if Plaintiff had been diagnosed with lupus, the presence of an impairment does not amount to an inability to work under the regulations. *Coleman v. Shalala*, 895 F. Supp. 50, 53 (S.D.N.Y. 1995). Therefore, the evidence of record was complete and adequate to permit the ALJ to make a proper RFC determination based on his review of the record as a whole. *See Brogan-Dawley v. Astrue*, 484 F. App'x 632, 634 (2d Cir. 2012); *Carvey v. Astrue*, 380 F. App'x 50, 53 (2d Cir. 2010).

Plaintiff also argues that because the ALJ provided little weight to the two opinions contained in the record, he formulated the RFC based on his lay opinion without relying on any medical opinion of the record. This argument in unavailing because it has been well-recognized that when analyzing the record as a whole, the ALJ does not have to rely on one particular opinion, and may formulate an RFC without the benefit of a medical opinion. *See, e.g.*, *Monroe v. Comm'r of Soc. Sec*, 676 F. App'x 5, 9 (2d Cir. 2017) (summary order) (the ALJ properly discounted a medical source opinion based on, among other things, the inconsistency of the physician's opinion with his treatment notes, and relied on treatment notes and activities of daily living to formulate the RFC); *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (summary order) ("the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision"); *Tankisi v. Comm'r Soc. Sec*, 521 F. App'x 29, 34 (2d Cir. 2013) (summary order) (where "the record contains sufficient evidence from which an ALJ can assess . . . residual functional capacity," a medical source statement or formal medical opinion is not necessarily

required); *Pellam*, 508 F. App'x at 90 (2d Cir. 2013) (upholding the ALJ's RFC determination where he "rejected" physician's opinion but relied on physician's findings and treatment notes).

Because it is "within the province of the ALJ to resolve" conflicting findings and determine the scope of Plaintiff's RFC, *see Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002), the Court finds that the RFC assessment here was supported by substantial evidence. Plaintiff cites evidence that she believes supports her position that her limitations were more disabling than the one identified in the RFC. However, the question before this Court "is not whether substantial evidence support plaintiff's position, but whether it supported the ALJ's decision." *Anderson v. Colvin*, No. 1:14-CV-01038 (MAT), 2017 WL 2797913, at *3 (W.D.N.Y. June 28, 2017); *see also Cartagena v. Comm'r of Soc. Sec.*, No. 18-CV-245-FPG, 2019 WL 4750425, at *6 (W.D.N.Y. Sept. 30, 2019) ("[W]here substantial evidence supports the ALJ's decision, a court will not remand simply because the evidence also supports an alternate conclusion."). While Plaintiff may disagree with the ALJ's conclusions, the Court must "defer to the Commissioner's resolution of conflicting evidence" and reject the ALJ's findings "only if a reasonable factfinder would have to conclude otherwise." *Morris v. Berryhill*, 721 F. App'x 25 (2d Cir. 2018) (internal citations and quotations omitted). "Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (internal quotation marks omitted).

Here, the record supports the ALJ's RFC determination and does not demonstrate that any limitations beyond the ones identified in the RFC were warranted. As indicated above, the ALJ properly considered treatment records of Plaintiff's physicians demonstrating Plaintiff's unremarkable physical examinations that did not support the alleged severity of her symptoms, as

well as Plaintiff's hearing testimony that was inconsistent with her reported activities of her daily living showing that Plaintiff took care of her two autistic sons and pets, maintained household responsibilities such as cleaning, laundry, mowing her lawn, shopping, and preparing food, walked for two hours a day, and maintained an active lifestyle throughout the relevant period.  Tr. 65, 68, 190-93, 266, 678, 681; *see also Lewis v. Colvin*, 548 F. App'x 675, 678 (2d Cir. 2013) (summary order) (the ALJ's decision not to credit plaintiff's subjective testimony regarding his symptoms was appropriate where the testimony was not supported by the objective medical evidence and plaintiff's daily activities).

Plaintiff's arthritis in her back and allegations of photosensitivity are accommodated by the ALJ's restrictions to limit Plaintiff to light work with only occasional crawling and climbing and the need to wear eye protection to block out fluorescent lighting in any work situations.  Tr. 20.  Additionally, "[w]here, as here, a claimant has sought little-to-no treatment for an allegedly disabling condition, h[er] inaction may appropriately be construed as evidence that the condition did not pose serious limitations."  *Diaz-Sanchez v. Berryhill*, 295 F. Supp. 3d 302, 306 (W.D.N.Y. 2018).  The record demonstrates that Plaintiff did not seek or require any treatment for her allegedly disabling conditions as she did not follow the course of treatment prescribed by either of her treating providers to lessen the severity of her symptoms, and, instead, followed her own treatment routine, which consisted of diet, exercise, and supplement intake.  *Arnone v. Bowen*, 882 F.2d 34, 39 (2d Cir. 1989) (lack of evidence that claimant sought medical attention may not preclude a finding of disability, but it did "seriously undermine" a disability claim).

In sum, because Plaintiff has presented no medical evidence of functional limitations greater than those found by the ALJ, Plaintiff has failed to meet her burden to demonstrate that she had a more restrictive RFC than found by the ALJ.  *See Smith v. Berryhill*, 740 F. App'x 721, 726

(2d Cir. 2018) (summary order) (plaintiff failed his duty to prove a more restrictive RFC). Therefore, the RFC determination is supported by substantial evidence.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (ECF No. 15) is DENIED, and the Commissioner's motion for judgment on the pleadings (ECF No. 16) is GRANTED. The Commissioner's decision is hereby AFFIRMED. The Clerk of Court is directed to enter judgment and close the case.

**IT IS SO ORDERED.**

Dated: December 28, 2020
      Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court